IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANNE STEPPE, | : | No. 4:25cv609 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CARROLS LLC D/B/A BURGER | : | |
| KING; and CARROLS CORPORATION | : | |
| D/B/A BURGER KING, | : | |
| Defendants | : | |

....................................................................................................................

## **MEMORANDUM**

Plaintiff Diane Steppe asserts claims against Defendants Carrols LLC d/b/a

Burger King and Carrols Corporation d/b/a Burger King for disability

discrimination pursuant to the Americans with Disabilities Act, as amended, 42

U.S.C. § 12101, *et seq.* ("ADA") and the Pennsylvania Human Relations Act, 43

PA. STAT. § 951, *et seq.* ("PHRA").  Specifically, Steppe alleges in her amended

complaint that defendants did not hire her because of her intellectual and

learning disabilities.

Before the court is a motion to dismiss Steppe's amended complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 18).  For the reasons

that follow, the motion to dismiss will be denied.

**Background**

Steppe lives with both an intellectual disability and a learning disability.[1] (Doc. 17, Am. Compl. ¶ 21). At all relevant times, testing using the Wechsler Adult Intelligence Scale allegedly placed Steppe in the borderline range of intellectual functioning compared to individuals of the same age. (Id. ¶ 22).

Despite her disabilities, Steppe pursued her education and sought gainful employment. From grade school through high school, Steppe attended special education classes under an individualized education program. (Id. ¶ 24). Then, as an adult, she worked through organizations that provide employment opportunities for individuals with disabilities. (Id. ¶ 25). For instance, plaintiff has been employed for several years as a custodian through the AbilityOne Program at the federal courthouse in Williamsport, Pennsylvania. In that role, Steppe's responsibilities include cleaning chambers, courtrooms, and offices. (Id. ¶ 26).

Steppe asserts that the Social Security Administration has recognized her disabilities. (Id. ¶ 28). As a child, plaintiff first received childhood disability benefits. (Id.) And now as an adult, she receives social security disability benefits. (Id.)

---

[1] These background facts are derived from plaintiff's amended complaint. At this stage of the proceedings, the court must accept all factual allegations as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citations omitted). The court makes no determination, however, as to the ultimate veracity of these assertions.

According to Steppe, her disabilities appear not only in records and testing but also in how she speaks and carries herself. (Id. ¶ 40).  Plaintiff asserts that she has a distinctive vocal tone and mannerisms often associated with individuals who have intellectual disabilities. (Id.)

On or about August 29, 2023, plaintiff applied for a crew member position at defendants' Williamsport location. (Id. ¶ 30).  The position required prior experience in a fast-paced food service environment. (Id. ¶ 32).  Plaintiff asserts that she met the qualifications listed for the job and could perform the essential functions of the position with or without reasonable accommodations. (Id. ¶¶ 31, 59).  According to Steppe, she also had relevant experience working at a food concession stand during the heavily attended Little League World Series ("LLWS"). (Id. ¶ 32).

On September 1, 2023, defendants' general manager, Brandy Davis, interviewed Steppe. (Id. ¶ 33).  During the interview, plaintiff spoke openly about her background and explained that, despite her disabilities, she considers herself to be a quick learner. (Id. ¶ 35).  Steppe described her work experience with organizations that provide employment opportunities for individuals with disabilities. (Id. ¶ 36).  Plaintiff also disclosed that, although she was still working as a custodian at the Williamsport federal courthouse, she was applying for the position with defendants because she wanted to work more hours. (Id.)

Steppe asserts that Davis knew that she was disabled. (Id. ¶ 41). According to plaintiff, she disclosed her disabilities to Davis. (Id.) Plaintiff contends that her distinctive vocal characteristics and mannerisms, associated with those disabilities, also made this apparent. (Id.)

According to plaintiff, Davis did not inquire further into her work experience. (Id. ¶ 42). Instead, Davis stated that plaintiff's involvement in concessions at LLWS did not qualify as a fast-food experience. (Id. ¶ 44). Davis also told plaintiff directly that the position with defendants was not suitable for her because it could, at times, be overwhelming. (Id. ¶ 47). Davis then ended the interview and informed plaintiff that she would not be hired. (Id.)

Based on the above allegations, Steppe's amended complaint advances two causes of action: disability discrimination under the ADA (Count I) and under the PHRA (Count II). (Doc. 17).[2]  Defendants' Rule 12(b)(6) motion seeks dismissal of this action with prejudice. (Doc. 18).

**Legal Standard**

To survive a motion to dismiss, "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.' " Doe v.

---

[2] As plaintiff brings suit pursuant to the ADA, a federal statute, the court has federal question jurisdiction. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The court has supplemental jurisdiction over the plaintiff's PHRA claim pursuant to 28 U.S.C. § 1367.

4

Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022) (quoting FED. R. CIV. P. 8(a)(2)). This means a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled which allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

The court evaluates motions to dismiss using a three-step process. The first step involves identifying the elements of each claim. Oldham v. Pennsylvania State Univ., 138 F.4th 731, 743 (3d Cir. 2025) (citation omitted). The second step involves reviewing the operative pleading and disregarding any formulaic recitation of the elements of a claim or other legal conclusion, as well as allegations that are so threadbare or speculative that they fail to cross the line between the conclusory and factual. See Lutz v. Portfolio Recovery Assocs., LLC, 49 F.4th 323, 328 (3d Cir. 2022) (citations and quotation marks omitted).

The third step evaluates the plausibility of the remaining allegations. Id. In evaluating plausibility of the plaintiffs' allegations, the court accepts all factual allegations as true, construes the complaint in the light most favorable to the

plaintiffs, and draws all reasonable inferences in the plaintiffs' favor. Id. (citations omitted).

**Analysis**

### 1. Plaintiff's ADA/PHRA Discrimination Claims

Plaintiff brings discriminatory failure to hire claims under the ADA/PHRA.[3] To recover for unlawful discrimination alleging a failure to hire, an applicant must establish that: "(1) [she] belongs to a protected category; (2) [she] applied for and was qualified for a job for which the employer was seeking applicants; (3) despite [her] qualifications, [she] was rejected; and (4) after [her] rejection, the position remained open . . . or [was filled] with a person not belonging to the protected category." Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996)).

Defendants challenge the first and last elements of Steppe's *prima facie* case of discrimination—protected disability status and discriminatory conduct.[4] (Doc. 21, Br. in Supp. at 5, 15). The court will address each argument in turn.

---

[3] Defendants contend that plaintiff failed to exhaust her administrative remedies before the Pennsylvania Human Relations Commission ("PHRC"). (Doc. 21, Br. in Supp at 4). However, plaintiff asserts that the PHRC mailed the "Notice of Complainant's Rights After Closure of Complaint" to defense counsel and maintains that she has satisfied the PHRA's administrative exhaustion requirement. (Doc. 27, Br. in Opp. at 2, 13). In support of her position, plaintiff attached the notice to her brief in opposition. (See Doc. 27-1). Defendants failed to address plaintiff's argument in their reply brief. Thus, based on the parties' submissions, the court concludes that Steppe has exhausted her administrative remedies.

[4] The parties analyze plaintiff's ADA and PHRA claims using the same legal theories. The court will address those claims collectively under the same legal standard. See Morgan v. Allison Crane & Rigging LLC, 114 F.4th 214, 220, n. 21 (3d Cir. 2024) ("federal courts should continue to interpret the PHRA in harmony with the ADA."); Colwell v. Rite Aid Corp., 602 F.3d

6

### a. Disability

Under the ADA, it is unlawful for a covered entity to "discriminate against a qualified individual on the basis of disability in regard to job application procedures . . . [and] . . . hiring [.]" 42 U.S.C. § 12112(a).  A plaintiff has a "disability" within the meaning of the ADA if she: (1) has a physical or mental impairment that substantially limits one or more of her "major life activities"; (2) has "a record of such an impairment"; or (3) is "regarded as having such an impairment." Morgan, 114 F.4th at 221 (quoting 42 U.S.C. § 12102(1)).  Claims arising under the first part of the definition are called "actual disability" claims under ADA case law. Id.  Claims stemming from the second part of the definition are called "record of" disability claims. Eshelman v. Agere Sys., Inc., 554 F.3d 426, 437 (3d Cir. 2009).  Lastly, the third part of the definition forms the foundation of "regarded as" disability claims. Morgan, 114 F.4th at 223-24.

In opposition to the motion to dismiss, Steppe clarifies that she is not pursuing a "record of" disability claim. (Doc. 27, Br. in Opp. at 10).  Rather, she is advancing "actual disability" and "regarded as" disability claims.

*Actual Disability Claim* – Steppe contends that she suffers from an intellectual developmental disorder, an intellectual disability, and a learning

---

495, 500, n. 2 (3d Cir. 2010) ("[T]he same legal standard that applies to the ADA applies equally to disability discrimination claims under the PHRA.").

disability. (Doc. 17, Am. Compl. ¶ 21).  Congress amended the ADA to ensure that individuals with certain impairments, including "intellectual and developmental disabilities[,]" receive the protection the statute was intended to provide. Koller v. Riley Riper Hollin & Colagreco, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) (citation omitted); see also Morgan, 114 F.4th at 217-18.

In assessing alleged impairments, "[t]he specific issue in each case . . . is whether the plaintiff's particular disorder impairs [her] life in a manner which renders [her] disabled or handicapped under the acts." Gaul v. AT & T, Inc., 955 F. Supp. 346, 350 (D.N.J. 1997), aff'd sub nom. Gaul v. Lucent Techs., Inc., 134 F.3d 576 (3d Cir. 1998) (citation omitted).  Stated differently, the ADA requires a plaintiff-specific analysis. Id.  Whether an individual is disabled depends less on the name or diagnosis of the impairment and more on how that impairment affects the particular individual. Id.  Accordingly, "[t]he inquiry is, of necessity, an individualized one – whether the particular impairment constitutes for the particular person a significant barrier to employment." Id. (citation omitted).

As for the major life activities substantially limited by a mental impairment, the ADA provides a non-exhaustive list that includes "learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2).

In her amended complaint, Steppe describes her alleged disability as follows:

21. At all times relevant hereto, Steppe has been diagnosed with both an Intellectual Disability (intellectual developmental disorder) and a Learning Disability.

22. At all times relevant hereto, Steppe was in the borderline range of functioning compared to same-aged peers per the Wechsler Adult Intelligence Score testing.

23. At all times relevant hereto, Steppe's disabilities and cognitive deficits related thereto substantially limited one or more major life activities including, but not limited to, communication, learning, gathering and organizing thoughts, verbal comprehension, memory, articulation/speech, attention, concentration, math, perceptual reasoning, processing speed, intellectual functioning, fund of general information, self-care, self-direction, and work.

24. During her grade school through high school education, from on or about August 1986 through on or about June 1999 when she graduated with a high school diploma, Steppe was in special education with an IEP due to her intellectual and learning disabilities.

(Doc. 17, Am. Compl. ¶¶ 21-24).

Steppe has plausibly pleaded that she has a mental impairment that substantially limits one or more of her major life activities. Steppe "is not required, at this early pleading stage, to go into particulars about the life activity affected by her alleged disability or detail the nature of her substantial limitations." Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009). Thus, defendants' motion to dismiss Steppe's "actual disability" claim will be denied.

9

*Regarded As Disability Claim* – Defendants also move to dismiss Steppe's "regarded as" disability claim. According to defendants, Steppe failed to plead facts supporting her claim that defendants regarded her as a disabled individual.[5] (Doc. 21, Br. in Supp. at 12).

In comparison to an actual disability claim, "the requirements for a *prima facie* 'regarded as' claim are less demanding." Morgan, 114 F.4th at 224 (quoting Mancini v. City of Providence by & through Lombardi, 909 F.3d 32, 46 (1st Cir. 2018)). Proof of a "regarded as" claim requires showing of prohibited action taken by the employer "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." Id. at 223-24 (quoting 42 U.S.C. § 12102(3)(A)).

---

[5] Defendants attached notices from the PHRC, Steppe's complaint which had been dual filed with the PHRC and the Equal Employment Opportunity Commission ("EEOC"), and defendants' PHRC answer to their motion to dismiss. (Docs. 21-1 – 21-2). In deciding a motion to dismiss, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). "[A] document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (cleaned up)); see also Doe, 30 F.4th at 342 (citations and internal quotation marks omitted).

Steppe expressly references her PHRC complaint and defendants' PHRC answer in her amended complaint. (Doc. 17, Am. Compl. ¶¶ 8-10). Moreover, Steppe does not dispute the authenticity of the attached documents. Thus, the court will consider these documents.

Here, Steppe alleges that "Davis knew of Steppe's disabilities . . . and regarded Steppe as being disabled, through what Steppe told her and Steppe's distinctive vocal characteristics and mannerisms as a result of her disabilities."[6] (Doc. 17, Am. Compl. ¶ 41).  These allegations are sufficient to survive a motion to dismiss since Steppe "need[s] only put forth allegations that raise a reasonable

---

[6] Defendants argue that Steppe is barred from bringing this argument before the court in this matter.  According to defendants, "[i]f such mannerisms and characteristics were clearly distinct and commonly attributed to Plaintiff's alleged disability, she should have, and was required, to plead such allegations in her PHRC complaint" before the EEOC. (Doc. 21, Br. in Supp at 13).  Although plaintiff does not address this argument, the court will briefly consider it for the sake of completeness.

 "The test for exhaustion is 'whether the acts alleged in the subsequent [judicial complaint] are fairly within the scope of the prior [administrative charge], or the investigation arising therefrom.' " Kopko v. Lehigh Valley Health Network, 776 F. App'x 768, 773 (3d Cir. 2019) (quoting Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996)).  Therefore, the court must determine whether the claims presented in the judicial complaint are "reasonably related to those in the administrative charge" by assessing "whether there is a close nexus between the facts in the administrative charge and those in the judicial complaint." Kopko v. Lehigh Valley Health Network, 776 F. App'x 768, 773 (3d Cir. 2019) (cleaned up); see also Hicks v. ABT Assocs., Inc., 572 F.2d 960, 967 (3d Cir. 1978).

Steppe alleged in her EEOC complaint that "during the interview, I made manager Brenda [sic] . . . aware of my disability . . . [and she] told me that the job was not the right environment for me and that it can become overwhelming . . . [and] Respondent discriminated against me based on my disability." (Doc. 21-1, at ECF pp. 7-8).

Based on information available to the court, Steppe drafted the EEOC complaint herself as she is the sole signatory to the complaint.  An EEOC charge must be construed liberally, particularly when it is prepared by a pro se plaintiff. Hicks, 572 F.2d at 965 (citing Tillman v. City of Boaz, 548 F.2d 592, 594 (5th Cir. 1977)).

Plaintiff's "mannerisms and characteristics" theory underlying her "regarded as" claim falls within the scope of her EEOC complaint, whether or not it is construed liberally. Thus, defendants' argument is unpersuasive and will be rejected.

11

expectation that discovery will reveal evidence of the necessary element."

Fowler, 578 F.3d at 213 (cleaned up). Given the fact specific nature of this inquiry, the question of whether Steppe was regarded by defendants as having a mental impairment is better suited for a motion for summary judgment. Thus, defendants' motion to dismiss Steppe's "regarded as" disability claim will be denied.

**b. The Position Remained Open and The Employer Continued to Seek Applicants**

Lastly, defendants argue that plaintiff failed to plead the last element of her *prima facie* case, namely, after plaintiff's rejection, the position remained open and the employer continued to seek applicants. (Doc. 21, Br. in Supp. at 14).

The Third Circuit has held that "as an alternative to the fourth element . . . the plaintiff could show that the position was filled 'with a person not belonging to the protected category.' " Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997), abrogated on other grounds by Sutton v. United Air Lines, Inc., 527 U.S. 471 (1999) (citation omitted). "By holding that favorable treatment outside the protected class is an 'alternative' element to a prima facie case, we made clear that this element can be present but by no means must be present." Id.

Here, Steppe alleges in her amended complaint that "Carrols continued to

12

advertise for the position, the position remained open, Carrol[s] interviewed other candidates for the position, and the position was filled with an individual who did not have an intellectual disability and learning disability and manifestations of the same such as Steppe." (Doc. 17, Am. Compl. ¶ 58).

Defendants deny these allegations and assert that they possess evidence to prove their falsehood. (Doc. 21, Br. in Supp. at 15). By doing so, defendants seek to fast-forward this case to the summary judgment phase. At this juncture, Steppe does not need to present any evidence that would substantiate her allegations. Summary judgment is a more appropriate vehicle to assess the strength of plaintiff's allegations, alongside her evidence.

For these reasons, Steppe's allegations are sufficient to establish the fourth element of her *prima facie* discrimination case. Accordingly, defendants' motion to dismiss will be denied.

**Conclusion**

For the reasons set forth above, defendants' motion to dismiss will be denied. An appropriate order follows.

Date: 3/9/26

JUDGE JULIA K. MUNLEY
United States District Court

13